IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OYENIKE ALAKA,<br>Petitioner | : | |
| v. | : | CIVIL ACTION |
| IMMIGRATION AND<br>NATURALIZATION SERVICE, et al.<br>Respondents | : | NO. 02-4664 |

**ORDER**

AND NOW on this _________ day of __________________, 2002, upon consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the Petition is dismissed with prejudice.

________________________________
U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OYENIKE ALAKA, | : | |
| Petitioner | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| IMMIGRATION AND | : | NO. 02-4664 |
| NATURALIZATION SERVICE, et al. | : | |
| Respondents | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**PETITIONER'S WRIT OF HABEAS CORPUS**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendants, the District Director of the Immigration and Naturalization Service, the Commissioner of the Service, the Acting Chair of the Board of Immigration Appeals, and the Attorney General of the United States, files this response in opposition to the petitioner's writ of habeas corpus.

## I. INTRODUCTION

This is a habeas petition brought under 28 U.S.C. § 2241 by Oyenike Alaka, a native and citizen of Nigeria. Alaka is currently detained in the custody of the Immigration and Naturalization Service ("the Service") in York, Pennsylvania. On August 8, 2001, Alaka returned to the United States through J.F.K. Airport in New York after spending 8 months in Nigeria, and applied for admission to the country as a returning lawful permanent resident. (See Exhibit 1). Service officials apprehended and

detained Alaka when they discovered that she had an outstanding federal warrant for a probation violation in Chicago. At the time she attempted to reenter the country, she was six months pregnant.

On November 19, 2001, the Service issued a Notice to Appear, advising Alaka that she was ineligible for admission to the United States because she is an alien convicted of committing a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(1)(I). (See Exhibit 5). Alaka admitted the charges in the Notice to Appear, namely that she had applied for admission to enter the United States as a returning lawful permanent resident, and that she was convicted of aiding and abetting bank fraud on June 5, 1992 in the District of Minnesota. (See Exhibit 5, p.2, handwritten "A" designation next to allegations stands for "admitted"). Although she admits she is removable from the country, Ms. Alaka is seeking various forms of relief from removal through the administrative process. The removal proceedings are pending before Immigration Judge Walter Durling in York, Pennsylvania.

While Ms. Alaka is pursuing avenues of relief before the Immigration Judge, the Service has lawfully exercised its discretion to keep her in custody. If Alaka were to abandon her attempts to remain in the United States, she would be free to leave immediately (and would have been free to do so at any time during this process, including

before her baby was born).[1] It can fairly be stated in this case that Alaka holds the keys to her release.

Moreover, the Service is not, as petitioner alleges, circumventing the Third Circuit's decision in Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001). In Patel, the Court held that mandatory custody of aliens in pending deportation proceedings pursuant to Section 236(c) of the Act [8 U.S.C. § 1226(c)], without an opportunity for individualized review of their detention, was unconstitutional. However, the Patel decision is not applicable here, because it does not apply to arriving aliens such as Alaka. Alaka is not being subjected to mandatory custody under Section 236(c) of the Act. Rather, she is being detained pursuant to Section 235(b)(2) of the Act, the section that pertains to arriving aliens. Custody under Section 235(b)(2) of the Act is not mandatory, but rather allows for parole of the alien in the discretion of the District Director. See 8 C.F.R. 235.3(b)(5)(i) and 8 C.F.R. 212.5(b). In Alaka's case, the District Director exercised his discretion and determined that Alaka should remain in custody. (See Exhibit B to

---

1 We understand that Alaka claims she would be subject to dangerous conditions if she returns to Nigeria. This federal habeas petition is not the proper forum to debate the merits of Alaka's asylum claims, which are pending before the immigration judge. We note only that Nigeria is a large country and while there are substantial pockets of civil unrest, there is no requirement that she return to the area that is the subject of the hostilities she alleges. Moreover, she states in her petition that her husband was subjected to threats and attacks in January and May, 2001, but nonetheless remained for three more months before returning to the United States.

Petition). However, this is decidedly distinct from the issue in Patel, where no one held pursuant to Section 236(c) was entitled to an individualized review of his detention.

There was no basis for the Immigration Judge in this case to issue a bond decision on March 12, 2001, because the regulations to the Act specifically state that an immigration judge has no authority to reexamine conditions of custody imposed by the Service with respect to arriving aliens who are in removal proceedings (such as Alaka). 8 C.F.R. 3.19(h)(2)(i)(B). The Service appealed the bond decision to the Board of Immigration Appeals, and the Board granted a stay of the bond decision. (See Exhibits E, F and I attached to the Petition). This is not a case where the "automatic stay" provision of which petitioner complains, comes into play. The Board affirmatively acted on March 14, 2001, one day after the appeal, to stay the bond ruling. Thus, petitioner cannot complain that she is subject to an indefinite delay while awaiting the Board to rule.

In any event, to the extent Immigration Judge Durling's March 12th bond decision was at all persuasive on the issue of whether arriving aliens are entitled to a bond hearing before an immigration judge, the underlying basis for his decision has now been undermined by his finding on July 8, 2002 that Alaka had abandoned her status as a lawful permanent resident due to her 1994 and 1998 criminal convictions in France and Canada.

Finally, Patel did not, as petitioner claims, hold that there must be judicial

review of all custody decisions. To the extent that Patel stands for the proposition that there must be some form of individualized review for persons in custody without a final order of removal, the Service has met this requirement. The District Director conducted an individualized review and determined that Alaka should remain in custody. Alaka has three criminal convictions, the most recent in 1998. While she has equities in her favor, the District Director reasonably held that her equities did not rise to the level of "urgent humanitarian reasons," nor did her equities outweigh the strong governmental interest in keeping her detained. See 8 C.F.R. 212.5(b). This discretionary decision of the District Director is not subject to judicial review by the Court. See 8 U.S.C.§ 1252(a)(2)(B)(ii); Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001) (federal jurisdiction over § 2241 petitions does not extend to review of factual or discretionary determinations). The only way petitioner can get relief from this court through a habeas petition is if her detention is illegal. Alaka can make no such showing here and her petition should be denied.

## II. FACTUAL BACKGROUND

Alaka entered the United States illegally on December 21, 1984, through Buffalo, New York. (See Exhibit 1, p.1). On January 17, 1989, Alaka became a temporary resident of the United States as a special agricultural worker employed in Georgia. (See Exhibit 1). On December 1, 1990, Alaka became a lawful permanent resident of the United States. (See Exhibit 2).

Shortly after she became a lawful permanent resident, Alaka embarked

upon a scheme to defraud several banks in the Minneapolis area. On June 5, 1992, Alaka was convicted of Aiding and Abetting Bank Fraud in the United States District Court for the District of Minnesota, and sentenced to 8 months in prison. The fraud involved four separate banks and an intended loss of nearly $48,000. (See Exhibit 3).[2] Alaka's criminal conduct continued in countries outside the United States. In February, 1994, Alaka pleaded guilty in France to a drug charge involving cocaine and was sentenced to 3 years in prison. She was released after one and a half years, in or about August, 1995, upon her agreement to depart France. (Petitioner's Memorandum of Law, p.3). In May, 1998, Alaka was convicted in Canada for credit card fraud and sentenced to three months in prison. (See Petitioner's Memorandum of Law, p.2).[3]

Alaka has been outside the United States for extended periods of time, totaling approximately 42 months, since she became a lawful permanent resident in 1990. (See Petitioner's Memorandum of Law, pp. 4-5). After serving her sentence for fraud in Canada, she returned to Canada for three months in January 1999. In January 2001, Alaka returned to Nigeria and spent 8 months there before returning to the United States

---

[2] At the time of her conviction, Alaka's two older children were ages 4 and 1; it is unclear from the record where they stayed while Alaka was incarcerated.

[3] Petitioner's Memorandum states that Alaka's three year old son was in a French foster home while she was incarcerated in 1994; it does not state where her older son (then age 6) stayed during that time. The Petition does not state where the children stayed during the 1998 incarceration.

on August 8, 2001. Alaka claims to have returned to the United States because of threats to and attacks made on her husband in Nigeria from a rival tribal group in January and May, 2001. Alaka's claims for asylum and relief under the Convention against Torture Act ("CAT"), based on these events, are pending before the Immigration Judge.

On August 8, 2001, Alaka flew from Nigeria to J.F.K. Airport in New York. When she attempted to reenter the country, Service officials learned that Alaka had criminal convictions, and that there was an active federal warrant for a probation violation in Chicago. (See Exhibit 4). The Service officials determined that Alaka was an arriving alien who appeared to be inadmissible under Sections 212(a)(2)(A)(i)(I) (as an alien who has committed a crime involving moral turpitude) and 212(a)(2)(C) (as an alien who has been an illicit trafficker in any controlled substance). (See Exhibit 4).

Alaka was 6 months pregnant at the time she was taken into Service custody. According to the petition, she gave birth to her child David while in custody in or about November 8, 2001, and the child has been living with Alaka's sister-in-law since he was 2 days old. (Petitioner's Memorandum of Law, p.1-2).

On November 19, 2001, the Service issued a Notice to Appear, advising Alaka that she was ineligible for admission to the United States because she is an alien convicted of committing a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(1)(I). (See Exhibit 5).[4] Alaka admitted the charges in the Notice to

---

[4] Although the Service was apparently aware of the foreign convictions, only the United States conviction serves as the

Appear, but has not yet been removed because she is pursuing various forms of relief before the immigration judge. (See Exhibit 5).

On March 12, 2002, Immigration Judge Durling, interpreting the Third Circuit's ruling in Patel v. Zemski, found that the decision was broad enough to encompass arriving aliens, such as petitioner, who were lawful permanent residents. (Exhibit C to the Petition). While acknowledging that INS regulations (8 C.F.R. 3.19(h)(2)((i)(B)) specifically preclude an immigration judge from reviewing the custody of an arriving alien, he found that the regulation did not survive the Patel decision and issued a bond decision releasing petitioner on $2,500.

The Service contested Immigration Judge Durling's authority to issue such a bond decision and immediately appealed to the Board of Immigration Appeals by filing a notice of appeal on March 13, 2002 (Exhibit E to Alaka's Petition). On March 14, 2002, the Board ruled on the Service's motion and stayed the Immigration Judge's bond decision. Exhibit I to Alaka's Petition).[5]

---

basis for the Notice to Appear.

[5] At the time of the appeal, the Service attorney also filed a Form EOIR-43, Notice of INS Intent to Appeal Custody Redetermination, which is the form petitioner claims has the unconstitutional effect of automatically staying the immigration judge's custody decision. However, that was not the effect in this case, as the Board immediately ruled on the Service's motion. The Service no longer files the EOIR-43 in arriving alien cases, and has since withdrawn the EOIR-43 it filed in this case. Thus, the constitutionality of the use of the EOIR-43 is not at issue here.

Alaka had previously petitioned the Service for release pursuant to 8 C.F.R. 212.5(b), on the basis that she was not a flight risk and that her newborn son needed her. (See Exhibit A to the Petition, January 22, 2002 Request for Release). The District Director denied petitioner's parole request on April 12, 2002, citing insufficient ties to the community and information in her file indicating that she was likely to engage in criminal activities that might pose a danger to the community. (See Exhibit B to the Petition).

On July 8, 2002, Immigration Judge Durling determined that based on her foreign convictions, Alaka had constructively abandoned her status as a lawful permanent resident. (See Petitioner's Memorandum of Law, p. 7). This conclusion limits the type of relief Alaka might otherwise apply for from the immigration judge. However, there is a hearing scheduled for August 8, 2002 on her asylum and CAT claims.

Petitioner filed this habeas corpus petition on or about July 15, 2002. The Court has jurisdiction under 28 U.S.C. § 2241(c)(3); there is no exhaustion requirement.

## III. LEGAL ARGUMENT

A. Alaka's Detention Is Lawful Under The Act And Is Consistent With The Third Circuit's Decision In Patel v. Zemski.

Petitioner is an inadmissible arriving alien with criminal convictions. (See Exhibit 5). In Matter of Collado, 21 I&N Dec. 1061 (BIA 1998), the Board of Immigration Appeals held that a lawful permanent resident returning to the country is to be regarded as seeking admission into the United States notwithstanding his lawful permanent resident status. The Immigration Judge has no jurisdiction over the custody of inadmissible arriving aliens. See 8 C.F.R. 3.19(h)(2)(1)(b) ("an immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . arriving aliens in removal proceedings . . . ."). See also Matter of Oseiwusu, Interim Decision 3344 (BIA 1998) (vacating immigration judge's bond decision because an immigration judge has no authority over custody of arriving aliens).

The authority of the Immigration Court arises from the Act. "Immigration judges … are creatures of statute, receiving some of their powers and duties directly from Congress, 8 U.S.C. § 1252(b), and some of them by subdelegation from the Attorney General, 8 U.S.C. § 1103. These statutes and the regulations implementing them … contain a detailed and elaborate description of the authority of immigration judges." Lopez-Telles v. INS, 564 F.2d 1302, 1303 (9th Cir. 1977).

In his March 12, 2002 bond decision, Immigration Judge Durling relied on Patel v. Zemski, 275 F.3d 299 (3rd Cir. 2001) to find that he had the authority to issue a bond for an arriving alien who was also a lawful permanent resident, notwithstanding regulations to the contrary. (See Exhibit C to the Petition). In Patel, the Court held that mandatory custody of certain criminal aliens in pending deportation proceedings pursuant to Section 236(c) of the Act [8 U.S.C. § 1226(c)], without an opportunity for individualized review of their detention, was unconstitutional. However, Patel provides no authority for the proposition that immigration judges have custody over arriving aliens. Patel dealt with an alien being held pursuant to the mandatory detention provisions of Section 236(c) of the Act due to a criminal conviction that rendered him deportable. In contrast, petitioner is being detained pursuant to Section 235 of the Act and the Immigration Judge has no jurisdiction over such aliens. The Third Circuit did not rule in Patel, and has never ruled, that Section 235 is unconstitutional.

Before the sweeping changes made to immigration law in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), there were two proceedings: exclusion and deportation. Immigration judges had no authority over custody determinations regarding aliens in exclusion proceedings, such aliens not having been admitted to the United States. This included aliens arriving at ports of entry seeking and admission into the United States.

Under IIRIRA, while there is only one type of proceeding, - removal - the

differences in custody determinations and the jurisdiction of immigration judges with respect to aliens arriving at ports of entry and seeking admission remain unchanged. The Act and the regulations plainly distinguish between aliens detained pursuant to Section 235, who may only be released upon a grant of parole by the District Director, and aliens detained pursuant to Section 236, whose custody conditions may, in certain circumstances, be reviewed and ameliorated by an immigration judge. Petitioner falls squarely within the category of aliens detained pursuant to Section 235.

Section 235 of the Act governs the duties of the Service with respect to, *inter alia*, inspection and detention of aliens arriving in the United States. Section 235(b)(2) of the Act provides, in relevant part, that: "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for proceedings under section 240." The regulations provide further guidance with respect to arriving aliens who claim to be lawful permanent residents of the United States. 8 CFR §235.3(b)(5)(ii) provides that if a claim to lawful permanent resident status is verified and has not been terminated, then "the examining immigration officer will determine in accordance with Section 101(a)(13)(C) of the Act whether the alien is considered to be making an application for admission. … If the alien appears to be inadmissible, the immigration officer may initiate removal proceedings against the alien under Section 240 of the Act." Section 101(a)(13)(C)(v) of the Act [8 U.S.C. § 1101(a)(13)(C)(v)] provides in relevant part that, "an alien lawfully admitted for permanent residence in the United States shall not be

regarded as seeking admission into the United States ... unless the alien ... (v) has committed an offense identified in Section 212(a)(2) unless since such offense the alien has been granted relief under Section 212(h) or 240(A)(a) ...”

The regulations to the Act make it clear that Section 235 does not involve mandatory detention without an opportunity for individualized review, as was at issue in Patel. 8 CFR §235.3(c) provides that, “any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole of the alien shall only be considered in accordance with § 212.5(a) of this chapter.” (Emphasis added). The plain language of the regulation provides for an opportunity for parole. Alaka sought such parole, and was denied. The fact that the District Director declined to release her as a matter of his discretion, however, does not convert her detention into mandatory custody.

As Alaka is held pursuant to Section 235 of the Act, she has no right to a bond or a custody determination by the Immigration Judge. 8 CFR §3.19 provides that, “custody and bond determinations made by the Service pursuant to 8 CFR part 236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 236.” (Emphasis added). Similarly, 8 CFR §236.1(c)(5)(i) provides that “[a]n immigration judge may not exercise authority provided in this section … with respect to: (i) arriving aliens, as described in § 1.1(q) of this chapter, …” Section 1.1(q) defines an “arriving alien” in relevant part as “an alien who seeks admission to or transit through the United States, as provided in 8

CFR part 235, at a port-of-entry …"

Petitioner arrived at a port of entry seeking admission to the United States and has committed an offense identified in Section 212(a)(2) [8 U.S.C. § 1182(a)(2)]. Thus, despite her status as a lawful permanent resident, she is regarded as "seeking admission" by the plain language of Section 101(a)(13)(C)(v) of the Act [8 U.S.C. § 1101(a)(13)(C)(v)]. Alaka clearly fits into the category of an arriving alien who is properly detained pursuant to Section 235 of the Act. She could be released only upon a grant of parole by the District Director.

Indeed, the Board of Immigration Appeals has already ruled in a similar case to Alaka's (an arriving alien where the immigration judge set a bond), that an immigration judge has no authority to entertain the alien's request for a change in custody status. (See Exhibit 6). The Board further found that the Patel decision related only to the constitutionality of the mandatory detention provisions of Section 236 of the Act, not Section 235. (See Exhibit 6, p.2).

In any event, the entire premise for Immigration Judge Durling's March 12, 2002 bond decision was that Alaka should be entitled to additional rights based on her status as an arriving alien who was also a lawful permanent resident. However, on July 8, 2002, Judge Durling decided that Alaka had abandoned her lawful permanent residence status. Therefor, the entire basis for Judge Durling's bond decision, at least as it applies to petitioner, has been undermined and has no bearing in this case.

Alaka cannot prevail in her habeas petition unless she can show that her

detention is illegal. The law is that habeas courts are not to engage in evidentiary "second guessing" of factual determinations in the immigration context, but are limited to "purely legal" questions. Carranza v INS, 277 F.3d 65, 71 (1st Cir. 2002) ("Federal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error; that is colorable claims that an alien's statutory or constitutional rights have been violated."); Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001) (federal jurisdiction over § 2241 petitions does not extend to review of factual or discretionary determinations). At issue in this case is a discretionary decision of the District Director to continue to detain Ms. Alaka, despite sympathetic circumstances relating to the recent birth of her child. There is nothing illegal or unconstitutional about this determination, and the Court may not second guess the District Director's decision, even if it might have reached a different conclusion.

## IV. CONCLUSION

Petitioner Alaka cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief she requests. For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice.

Respectfully,

PATRICK L. MEEHAN
United States Attorney

______________________________
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division

Dated: July , 2002

______________________________
SUSAN R. BECKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia PA 19106-4476
(215) 861-8310 Telephone
(215) 861-8349 Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on the day of July, 2002, I caused a true and correct copy of the foregoing Government's Response to Petition for Writ of Habeas Corpus to be served by first-class mail, postage prepaid, upon the following:

Joseph Hohenstein, Esquire
Nationalities Service Center
1300 Spruce Street
Philadelphia, PA 19107

Attorney for Petitioner

__________________________________
Susan R. Becker