IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


OYENIKE ALAKA,
   Petitioner
     v.                 CIVIL ACTION
IMMUGRATION AND          NO. 02-4664
NATURALIZATION SERVICE, et al.
   Respondents

## ORDER

   AND NOW on this         day of                2002, upon

consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and
any response thereto, it is hereby ORDERED that the Petition is dismissed with prejudice.




                      U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


OYENIKE ALAKA,
     Petitioner
         v.                        CIVIL ACTION
IMMIGRATION AND                  NO. 02-4664
NATURALIZATION SERVICE, et al.
     Respondents

## ORDER

AND NOW on this          day of                        2002, upon

consideration of the Government's Response to Petitioner's Writ of Habeas Corpus, and any response thereto, it is hereby ORDERED that the Petition is dismissed with prejudice.


U.S.D.J.


14

---A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OYENIKE ALAKA,
     Petitioner
              v.                     CIVIL ACTION
IMMIGRATION AND             NO. 02-4664
NATURALIZATION SERVICE, et al.
     Respondents

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## PETITIONER'S WRIT OF HABEAS CORPUS

       The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendants, the District Director of the Immigration and Naturalization Service, the Commissioner of the Service, the Acting Chair of the Board of Inunigration Appeals, and the Attorney General of the United States, files this response in opposition to the petitioner's writ of habeas corpus. **1. INTRODUCTION**

       This is a habeas petition brought under 28 U.S.C. § 2241 by Oyenike Alaka, a native and citizen of Nigeria. Alaka is currently detained in the custody of the Immigration and Naturalization Service ("the Service') in York, Pennsylvania. On August 8, 2001, Alaka returned to the United States through J-F.K. Airport in New York after spending 8 months in Nigeria, and applied for admission to the country as a returning lawful permanent resident. (See Exhibit 1). Service officials apprehended and

detained Alaka when they discovered that she had an outstanding federal warrant for a probation violation in Chicago. At the time she attempted to reenter the country, she was six months pregnant.

On November 19, 200 1, the Service issued a Notice to Appear, advising Alaka that she was ineligible for admission to the United States because she is an alien convicted of committing a crime involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(1)(1). (See Exhibit 5). Alaka admitted the charges in the Notice to Appear, namely that she had applied for admission to enter the United States as a returning lawful permanent resident, and that she was convicted of aiding and abetting bank fraud on June 5, 1992 in the District of Minnesota. (See Exhibit 5, p.2, handwritten "X' designation next to allegations stands for "admitted"). Although she admits she is removable from the country, Ms. Alaka is seeking various forms of relief from removal through the administrative process. The removal proceedings are pending before Immigration Judge Walter Durling in York, Pennsylvania.

While Ms. Alaka is pursuing avenues of relief before the Immigration Judge, the Service has lawfully exercised its discretion to keep her in custody. If Alaka were to abandon her attempts to remain in the United States, she would be free to leave immediately (and would have been free to do so at any time during this process, including

-2-

before her baby was born).' It can fairly be stated in this case that Alaka holds the keys to her release. Moreover, the Service is not, as petitioner alleges, circumventing the Third Circuit's decision in Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001). In Patel, the Court held that mandatory custody of aliens in pending deportation proceedings pursuant to Section 236(c) of the Act [8 U.S.C. § 1226(c)], without an opportunity for individualized review of their detention, was unconstitutional. However, the Patel decision is not applicable here, because it does not apply to arriving aliens such as Alaka. Alaka is not being subjected to mandatory custody under Section 236(c) of the Act. Rather, she is being detained pursuant to Section 235(b)(2) of the Act, the section that pertains to arriving aliens. Custody under Section 235(b)(2) of the Act is not mandatory, but rather allows for parole of the alien in the discretion of the District Director. See 8 C.F.R. 235.3(b)(5)(i) and 8 C.F.R. 212.5(b). In Alaka's case, the District Director exercised his discretion and determined that Alaka should remain in custody. (See Exhibit B to

> We understand that Alaka claims she would be subject to dangerous conditions if she returns to Nigeria. This federal habeas petition is not the proper forum to debate the merits of Alaka's asylum claims, which are pending before the
> . gration judge. We note only that Nigeria is a large country and while there are substantial pockets of civil unrest, there is no requirement that she return to the area that is the subject of the hostilities she alleges. Moreover, she states in her petition that her husband was subjected to threats and attacks in January and May, 200 1, but nonetheless remained for three more months before returning to the United States.

-3-

Petition). However, this is decidedly distinct from the issue in Patel, where no one held pursuant to Section 236(c) was entitled to an individualized review of his detention.

There was no basis for the Immigration Judge in this case to issue a bond decision on March 12, 2001, because the regulations to the Act specifically state that an <u>immi</u> ation judge has no authority to reexamine conditions of custody imposed by the Service with respect to arriving aliens who are in removal proceedings (such as Alaka). 8 C.F.R. 3.19(h)(2)(i)(B). The Service appealed the bond decision to the Board of Immigration Appeals, and the Board granted a stay of the bond decision. (See Exhibits E, F and I attached to the Petition). This is not a case where the "automatic stay" provision of which petitioner complains, comes into play. The Board affin-matively acted on March 14, 200 1, one day after the appeal, to stay the bond ruling. Thus, petitioner cannot complain that she is subject to an indefinite delay while awaiting the Board to rule.

In any event, to the extent Immigration Judge Durling's March 12th bond decision was at all persuasive on the issue of whether arriving aliens are entitled to a bond hearing before an immigration judge, the underlying basis for his decision has now been undermined by his finding on July 8, 2002 that Alaka had abandoned her status as a lawful permanent resident due to her 1994 and 1998 criminal convictions in France and Canada.

-4-

Finally, Patel did not, as petitioner claims, hold that there must be judicia review of all custody decisions. To the extent that Patel stands for the proposition that there must be some form of individualized review for persons in custody without a final order of removal, the Service has met this requirement. The District Director conducted an individualized review and determined that Alaka should remain in custody. Alaka has three criminal convictions, the most recent in 1998. While she has equities in her favor, the District Director reasonably held that her equities did not rise to the level of "urgent humanitarian reasons," nor did her equities outweigh the strong governmental interest in keeping her detained. See 8 C.F.R. 212.5(b). This discretionary decision of the District Director is not subject to judicial review by the Court. See 8 U.S.C. § 1252(a)(2)(B)(ii); Sol v. INS 274 F.3d 648~ 651 (2d Cir. 200 1) (federal jurisdiction over § 2241 petitions does not extend to review of factual or discretionary determiinations). The only way petitioner can get relief from this court through a habeas petition is if her detention is illegal. Alaka can make no such showing here and her petition should be denied.

## 11.  **FACTUAL BACKGROUND**

Alaka entered the United States illegally on December 21, 1984, through Buffalo, New York. (See Exhibit 1, p. 1). On January 17, 1989, Alaka became a temporary resident of the United States as a special agricultural worker employed in Georgia. (See Exhibit 1). On December 1, 1990, Alaka became a lawful permanent resident of the United States. (See Exhibit 2).

Shortly after she became a lawful pen-nanent resident, Alaka embarked upon a scheme to defraud several banks in the Minneapolis area. On June 5, 1992, Alaka was convicted of Aiding and Abetting Bank Fraud in the United States District Court for the District of Minnesota, and sentenced to 8 months in prison. The fraud involved. four separate banks and an intended loss of nearly $48,000. (See Exhibit 3).' Alaka's criminal conduct continued in countries outside the United States. In February, 1994, Alaka pleaded guilty in France to a drug charge involving cocaine and was sentenced to 3 years in prison. She was released after one and a half years, in or about August, 1995, upon her agreement to depart France. (Petitioner's Memorandum of Law, p.3). In May, 1998, Alaka was convicted in Canada for credit card fraud and sentenced to three months in prison. (See Petitioner's Memorandum of Law, p.2).' Alaka has been outside the United States for extended periods of time, totaling approximately 42 months, since she became a lawful permanent resident in 1990. (See Petitioner's Memorandum of Law, pp. 4-5). After serving her sentence for fraud in Canada, she returned to Canada for three months in January 1999. In January 200 1,

[2] At the time of her conviction, Alaka's two older children were ages 4 and 1; it is unclear from the record where they stayed while Alaka was incarcerated.

[3] Petitioner's Memorandum states that Alaka's three year old son was in a French foster home while she was incarcerated in 1994; it does not state where her older son (then age 6) stayed during that time. The Petition does not state where the children stayed during the 1998 incarceration.

-6-

Alaka returned to Nigeria and spent 8 months there before returning to the United States on August 8, 200 1. Alaka claims to have returned to the United States because of threats to and attacks made on her husband in Nigeria from a rival tribal group in January and May, 200 1. Alaka's claims for asylum and relief under the Convention against Torture Act ("CAT"), based on these events, are pending before the Immigration Judge.

On August 8, 200 1, Alaka flew from Nigeria to J.F.K. Airport in New York. When she attempted to reenter the country, Service officials learned that Alaka had criminal convictions, and that there was an active federal warrant for a probation violation in Chicago. (See Exhibit 4). The Service officials determined that Alaka was an arriving alien who appeared to be inadmissible under Sections 212(a)(2)(A)(i)(I) (as an alien who has committed a crime involving moral turpitude) and 212(a)(2)(C) (as an alien who has been an illicit trafficker in any controlled substance). (See Exhibit 4).

Alaka was 6 months pregnant at the time she was taken into Service custody. According to the petition, she gave birth to her child David while in custody in or about November 8, 200 1, and the child has been living with Alaka's sister-in-law since he was 2 days old. (Petitioner's Memorandum of Law, p. 1-2).

On November 19, 200 1, the Service issued a Notice to Appear, advising Alaka. that she was ineligible for admission to the United States because she is an alien convicted of committing a crime involving moral turpitude. 8 U.S.C. §

-7-

1182(a)(2)(A)(1)(1). (See Exhibit 5).' Alaka admitted the charges in the Notice to Appear, but has not yet been removed because she is pursuing various forms of relief before the immigration judge. (See Exhibit 5). On March 12, 2002, Immigration Judge Durling, interpreting the Third Circuit's ruling in <u>Patel v. Zemski,</u> found that the decision was broad enough to encompass arriving aliens, such as petitioner, who were lawful permanent residents. (Exhibit C to the Petition). While acknowledging that INS regulations (8 C.F.R. 3.19(h)(2)((i)(B)) specifically preclude an inunigration judge from reviewing the custody of an arriving alien, he found that the regulation did not survive the Patel decision and issued a bond decision releasing petitioner on $2,500. The Service contested Immigration Judge Durling's authority to issue such a bond decision and immediately appealed to the Board of Immigration Appeals by filing a notice of appeal on March 13, 2002 (Exhibit E to Alaka's Petition). On March 14, 2002, the Board ruled on the Service's motion and stayed the Immigration Judge's bond decision. Exhibit I to Alaka's Petition).'

[4]    Although the Service was apparently aware of the foreign convictions, only the United States conviction serves as the basis for the Notice to Appear.

[5]    At the time of the appeal, the Service attorney also filed a Form EOIR-43, Notice of INS Intent to Appeal Custody Redetermination, which is the form petitioner claims has the unconstitutional effect of automatically staying the . gration judge's custody decision. However, that was not the effect in this case, as the Board immediately ruled on the

-8-

Alaka had previously petitioned the Service for release pursuant to 8 C.F.R. 212.5(b), on the basis that she was not a flight risk and that her newborn son needed her. (See Exhibit A to the Petition, January 22, 2002 Request for Release). The District Director denied petitioner's parole request on April 12, 2002, citing insufficient ties to the community and information in her file indicating that she was likely to engage in criminal activities that might pose a danger to the community. (See Exhibit B to the Petition). On July 8, 2002, Immigration Judge Durling determined that based on her foreign convictions, Alaka had constructively abandoned her status as a lawful permanent resident. (See Petitioner's Memorandum of Law, p. 7). This conclusion limits the type of relief Alaka might otherwise apply for from the immigration judge. However, there is a hearing scheduled for August 8, 2002 on her asylum. and CAT claims. Petitioner filed this habeas corpus petition on or about July 15, 2002. The Court has jurisdiction under 28 U.S.C. § 2241(c)(3); there is no exhaustion requirement.

Service's motion. The Service no longer files the EOIR-43 in arriving alien cases, and has since withdrawn the EOIR-43 it filed in this case. Thus, the constitutionality of the use of the EOIR-43 is not at issue here.

-9-



111. <u>LEGAL ARGUMENT</u>

     A.    <u>Alaka's Detention Is Lawful Under The Act And Is Consistent With The Third Circuit's Decision In Patel v. Zemski.</u>

Petitioner is an inadmissible arriving alien with criminal convictions. (See Exhibit 5). In <u>Matter of</u> Collado, 21 I&N Dec. 1061 (BIA 1998), the Board of Immigration Appeals held that a lawful permanent resident retuning to the country is to be regarded as seeking admission into the United States notwithstanding his lawful permanent resident status. The Immigration Judge has no jurisdiction over the custody of inadmissible arriving aliens. See 8 C.F.R. 3.19(h)(2)(1)(b) ("an immigration judge may not redetermine conditions of custody imposed by the Service with respect to ... arriving aliens") in removal proceedings. See also Matter of Oseiwusu, Interim Decision 3344 (BIA 1998) (vacating immigration judge's bond decision because an immigration judge has no authority over custody of arriving aliens).

The authority of the Immigration Court arises from the Act. 'Immigration judges ... are creatures of statute, receiving some of their powers and duties directly from Congress, 8 U.S.C. § 1252(b), and some of them by subdelegation from the Attorney General, 8 U.S.C. § 1103. These statutes and the regulations implementing them ... contain a detailed and elaborate description of the authority of immigration judges." <u>Lopez-Telles v. INS.,</u> 564 F.2d 1302, 1303 (9' Cir. 1977).

-10-

In his March 12, 2002 bond decision, Immigration Judge Durling relied on <u>Patel v.</u> <u>Zemski</u>, 275 F.3d 299 (3' Cir. 2001) to find that he had the authority to issue a bond for an arriving alien who was also a lawful permanent resident, notwithstanding regulations to the contrary. (See Exhibit C to the Petition). In Patel, the Court held that <u>mandatory</u> custody of certain criminal aliens in pending deportation proceedings pursuant to Section 236(c) of the Act [8 U.S.C. § 1226(c)], without an opportunity for individualized review of their detention, was unconstitutional. However, Patel provides no authority for the proposition that immigration judges have custody over arriving aliens. Patel dealt with an alien being held pursuant to the mandatory detention provisions of Section 236(c) of the Act due to a criminal conviction that rendered him deportable. In contrast, petitioner is being detained pursuant to Section 235 of the Act and the Immigration Judge has no jurisdiction over such aliens. The Third Circuit did not rule in <u>Patel,</u> and has never ruled, that Section 235 is unconstitutional.

Before the sweeping changes made to immigration law in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('1IRIRA"), there were two proceedings: exclusion and deportation. Immigration judges had no authority over custody determinations regarding aliens in exclusion proceedings, such aliens not having been admitted to the United States. This included aliens arriving at ports of entry seeldng and admission into the United States.

Under IIRIRA, while there is only one type of proceeding, - removal - the differences in custody determinations and the jurisdiction of immigration judges with respect to aliens arriving at ports of entry and seeking admission remain unchanged. The Act and the regulations plainly distinguish between aliens detained pursuant to Section 235, who may only be released upon a grant of parole by the District Director, and allens detained pursuant to Section 236, whose custody conditions may, in certain circumstances, be reviewed and ameliorated by an immigration judge. Petitioner fans squarely within the category of aliens detained pursuant to Section 235.

Section 235 of the Act governs the duties of the Service with respect to, *inter alia,* inspection and detention of aliens arriving in the United States. Section 235(b)(2) of the Act provides, in relevant part, that: "if the examining inunigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for proceedings under section 240." The regulations provide finther guidance with respect to arriving aliens who claim to be lawful permanent residents of the United States. 8 CFR §235.3(b)(5)(ii) provides that if a claim to lawful permanen resident status is verified and has not been terminated, then "the e amining immigration officer will determine in accordance with Section 10 1 (a)(1 3)(C) of the Act whether the alien is considered to be making an application for admission. ... If the alien appears to be inadmissible, the innnigration officer may initiate removal proceedings against the alien under Section 240 of the Act." Section 101(a)(13)(C)(v) of the Act [8

-12-

U.S.C. § I 101(a)(13)(C)(v)] provides in relevant part that, "an alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking admission into the United States ... unless the alien ... (v) has committed an offense identified in Section 212(a)(2) unless since such offense the alien has been granted relief under Section 212(h) or 240(A)(a) ..."

The regulations to the Act make it clear that Section 235 does not involve mandatory detention without an opportunity for individualized review, as was at issue in Patel. 8 CFR §235.3(c) provides that, "any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole <u>of the alien shall o& be considered in accordance with § 212.5(a) of this chapter."</u> (Emphasis added). The plain language of the regulation provides for an opportunity for parole. Alaka sought such parole, and was denied. The fact that the District Director declined to release her as a matter of his discretion, however, does not convert her detention into mandatory custody.

As Alaka is held pursuant to Section 235 of the Act, she has no right to a bond or a custody determination by the Immigration Judge. 8 CFR §3.19 provides that, "custody and bond determinations made by the Service <u>pursuant to 8 CFR part 236</u> may be reviewed by an Immigration Judge pursuant to 8 CFR part 236." (Emphasis added). Similarly, 8 CFR §23 6. 1 (c)(5)(i) provides that "[a]n immigration judge may not exercise

-13-

authority provided in this section ... with respect to: (i) arriving aliens, as described in § 1. 1 (q) of this chapter, ... " Section 1. 1 (q) defines an "arriving alien" in relevant part as Ccan alien who seeks admission to or transit through the United States, as provided in 8 CFR part 23 5, at a port-of-entry ... "

       Petitioner arrived at a port of entry seeking admission to the United States and has committed an offense identified in Section 212(a)(2) [8 U.S.C. § 1182(a)(2)]. Thus, despite her status as a lawful permanent resident, she is regarded as "seeking admission" by the plain language of Section 101(a)(13)(C)(v) of the Act [8 U.S.C. § 1101(a)(13)(C)(v)]. Alaka clearly fits into the category of an arriving alien who is properly detained pursuant to Section 235 of the Act. She could be released only upon a grant of parole by the District Director.

       Indeed, the Board of Immigration Appeals has already ruled in a similar case to Alaka's (an arriving alien where the immigration judge set a bond), that an immigration judge has no authority to entertain the alien's request for a change in custody status. (See Exhibit 6). The Board further found that the Patel decision related only to the constitutionality of the mandatory detention provisions of Section 236 of the Act, not Section 235. (See Exhibit 6, p.2).

       In any event, the entire premise for Immigration Judge Durling's March 12, 2002 bond decision was that Alaka should be entitled to additional rights based on her status as an arriving alien who was also a lawful permanent resident. However, on July 8,

-14-

2002, Judge Durling decided that Alaka had abandoned her lawful permanent residence status. Therefor, the entire basis for Judge Durling's bond decision, at least as it applies to petitioner, has been undermined and has no bearing in this case.

Alaka cannot prevail in her habeas petition unless she can show that her detention is illegal. The law is that habeas courts are not to engage in evidentiary "second guessing of factual determinations in the inunigration context, but are limited to "purely legal" questions. Carranza v INS., 277 F.3d 65, 71 (Ist Cir. 2002) ("Federal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error; that is colorable claims that an alien's statutory or constitutional rights have been violated."); Sol v. INS, 274 F.3d 648, 651 (2d Cir. 200 1) (federal jurisdiction over § 2241 petitions does not extend to review of factual or discretionary determinations). At issue in this case is a discretionary decision of the District Director to continue to detain Ms. Alaka, despite sympathetic circumstances relating to the recent birth of her child. There is nothing illegal or unconstitutional about this determination, and the Court may not second guess the District Director's decision, even if it might have reached a different conclusion.

-15-

IV.                    <u>CONCLUSION</u>

        Petitioner Alaka cannot establish any violation of the Constitution or statutes of the United States, and there is no basis for the Court to grant the relief she requests. For the foregoing reasons, the government respectfully requests that the Court dismiss the Petition with prejudice. Respectfully,

                        PATRICK L. MEEHAN
                        United States Attorney

                        J                S G. HEEHAN
                        Assistant United States Attorney
                        Chief,              Civil Division

Dated: July 2002

                        SUSAN R. BECKER
                        Assistant United States Attorney
                        615 Chestnut Street, Suite 1250
                        Philadelphia PA 19106-4476
                        (215) 861-8310 Telephone
                        (215) 861-8349 Facsimile

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the day of July, 2002, 1 caused a true and correct copy of the foregoing Government's Response to Petition for Writ of Habeas Corpus to be served by first-class mail, postage prepaid, upon the following:

Joseph Hohenstein, Esquire
Nationalities Service Center
1300 Spruce Street
Philadelphia, PA 19107
Attorney for Petitioner

Susan R. Becker

-17-

JUL-19-2002 15:15
ON
?1?
P.02     Please begin with 1111m 41. after carefully reading the instructions,
Name and Location (City or Town) of Qualified Designated Entity

Application for Temporair
Special Agricultural Worke.     USDOJ/INS/LITIGATI
UNIT
The block below is for Government use *only*-     840 ?242

Fee Stamp

U.S. Department of Justice
Immigration and Naturalization Service

## Y)r

## 70
## ~(r)

Oualified Designated Entity I.D. No.     File No his applicant

A ~~71,5T ~1%

Applicant:  Do not write **above** this line. See instructions before filling in application. it you need more space to answerfully any question on this form, use a

s0arale sheet and identify each answer with the numbeirof the corresponding question. Fill In with lypewriVat or print in block leffars in *ink*

I - I hereby apply for status as indicated by the block checked below (check block A or B).

13 A Group[,     Temporary Residence as an alien who has performed seasonal agrieultural services in the U.S. for at least 90 clays during each
of the 12 month periods ending on May 1. 1984, 1910. and 1986.

Group It:     Temporary Residence AIS an alien who has performed sbasonal agricultural services in the U.S, for at least 90 days during the 12
month period ending on May 1, 1986.

2. Fan~ Nai;W-(Last Name in CAPITAL Letters)     (First Name)     (Middle Name)     3. Date of Eirth (Month/ Day/Year)

## ql&n LA     0

4. Other Names Used or Known by (including maiden name, if married)     S. Telephoas Numbers (Include Area Coda)
Home; Work;

6. Address, (No. and Street)     (Apt. No.)     (Town or City)     (State/Country)     (ZIP/Postal Code)

## q-401 *XS71     r1p1hu *6-1-1     ## M~     ## S 0 ?>

7. Last Address; Outside the U.S. (City or Town)     ## C-oL-Lk&--- koK     (Country)
(County, Province or State)

-0--A20,

a- Sex El Male     ## 13 f~. I ullj~t-o 0-to     °e-     fAIG     0 1

S. Race 0 Asian or Pacific isiander% Black, not of Hispanic origin

KFemaile     0 mispanic     0 White. not of Hispanic origin
10. maftl Status     A No", Married     13 Divorced     11. Country of Ciften3hip
E3 Separated
13 Widowed
(Comfy. Province or State)

(Country)

Uk

16. When did you last come to the U.S.? (Month/Day/Year)     16. Manner of Entry (Visitor. Sludgrit, Crewman. etc.)
C3 With visa (visitor, student, etc.) specify X Without visa

17. Place Of L20 Entry     18. List all Social Security Numbers used.
13 U.S. Pon of entry (City and State)     (1)     (3)
Border - 401 thLou     (4)
gh W (State)

.1     1 V. wgoumr s Name (Matoen) (Last) (First) 14 Living     13 Now     20. ather's Name (Last) (First)     Married
0     12.     Placi
e of     X Living     ah1h
(City
or
Q",r     \W461     Aift& j5g-j*f& 0 Deceased (Y~a~     Town)     0 Deceased (year)

I ZL HE* you previously applied for tilimporary residence as a Special Agricultural Worker?

No          13 Yes (it "Yes" give date, place of filing. and final disposition. it known)

14. Do u have any other record with mNs7

WoNo      13 Yes (if -Yes" give number(s)]

TO
(mom/Yean

JLL-19-2002 15:16    USDOJ/INS/LITIGRTION UNIT    717 840
7242                 P.03

bef- 191RIC

21. To assist in establishing the required residence. plea list all **affiliations** or associations with clubs, organizations, ci~urches. unions. businesses, ellc7

| Name of Organization | Location | From (mwolYear) |
|---|---|---|
| 04U | tw 071's V I U-6 | i9cs |

Documenta*m

f lur

22. FWdwo& in perishable commodities from May 1, 1983.through May 1. 1986 (List most recent first). Inforniation concerning employment inithe United States is subject to corroboration by the employer.

N

| Name of Fmplayw | Farm Name and LocaVon (stateawcoo niv) | From (MeniwYwr) | TO (WoMhNear) | Oays Worked | Type of Field Work | Type of Crop |
|---|---|---|---|---|---|---|
| 2ffEE? | -TNW&,WIC- 4*M PRRILr-I | | *V. 198S | ILA WS | VA(QJ rN A- | ~le |

fl~I 0 CT COM.9
NNtrl % I-YX SO-1 &-N~s
WhowsVOCT - Uf -I- b9s

TO
-lmofthlyew

Present

:FIV *19a L*

23. Ust all periods of residence in the United **States** since May 1. 1983 and means of3upport. Begin with your present address (attach an additional sheet 1 922MM).

| Striret Name and Number JAFS. Na) | city | State and ZIP Code | Means of Support | From (MorAhNearj) |
|---|---|---|---|---|
| ITIAVD1 | gb. #F-Q-.( | - | (4~ | |

Nu E; AD, +N Esv I (-u~-, M- - &Sel D .5 M

24.1 1 1 have    I    have not received **public cash** assistance from any source. including, but not limited to, the United StMe Governmerlt.
family has          any sate, county, **city** or municipality. (Check the film block if you or a dependent member.of ypur immediate . I
                    received **such** assistance, explain: including the name(s) of recipient(s) and **Social** Security ntimber(s)
used.)

25.1 13 have    I    have not been treated for a **moral** di36rder, drug addiction or **alcoholism.**

26.113 have    I **X hskve no t** bw arrested. con4ded or'oonfined in a pfisom
ha.    I **Xhave** not been the beneficiary of a pardon. amne$ly~ rehabilitation deorq% other act or clemency or **similar**
**actiom**

*Form* 1-700 (06115/87)Y Pop 2

JLL-19-2002 15:16    USDOJ/INS/LITIGATION UNIT    717 840 7242    P.04

29 Applicants for Temporary IIbsidlent status muk blish that dM we not exclud able fro m the United states u noeri- assure fa mily unity or vh ien* R is in th e pum cinteecit. of sockm 212 of M INA An applicant who is, ex6iudable under a provision of section 212 which maynot be waived is ineIigible for temporary ae bit por al ituph A number of section 2 12 (a): applicant who is excludable under a provision of section 212 (a) which may be (1) Miens who are mentally retarded. **^,I may~ if otherwise eligible, be grinned! temporary resident s%W % if an

appleadw for wair on farm I-W It rded and approved.

A. Grounds of exclusion which Wsay not be wallfId-
⁹ Listed by paragm0 h nuMb er of section 212 (a):
(9) Aliens afflicted with psych opathic p ersonality. se xual devia tion. or a involving m oral turpitude (does no t Include m inor traffic violation's).
(10)
Aliens who are narmic drug addicts or chronic alcohofcs.
111160M.

(15)  Alisrid; ilikk 10 become a public charge. Mowever, an alien is not ieIigible 4mis _y resioeird status underhis paragraph 0 the alien demonstrates a history of employment in the United States evidencing sell soppon wittiout reliance an pubIc cash assistance,

(23)  Aliens who have been convicted of a violation of any law or regulation relating foraro atic drugs o marilluaria , or whoha ve been illicit trafickers in narcotic dirugs or marihuaria.

(27)  AIM%S who intend to engage in activities prejudicial to the national Woresits of unlawkil activities of a subvoMve nature.

(28)  Ali" who are or at sinly time have been anarctists. or members of or 40111 111641 with any of 0 thnfitnist of other tdatilielan party, including any subdivision of affilate, threat

(29)  Aliens who have advoca ted or tau ght. either by pers onal utteran ce, or by means of an
I 0    id y wrinam matter. or through affiliation with an organization:
J
)    ppm o n to oroarfteti go vemm ent;
I
2)    -
(13) Aliens coming to the United Slates to engage in any immoral sexual
3) The assaiih ing or k illing of go vionrim ent officials bec ause of their official Cha racter.
4) The unlaw ful destruc tion of prop erty:
5) U ma
ge. Dr.
0) The ddcirin*$ of world com munis m. of live establish ment of a Welffarlion dictatorship in the United States.

(33)  Aliem who. during the period beginning on March 23.1933, and ending on May 6, 1945. under this &*CW of. or in association with:
1) The Nazi gov em ent in G ntma ny;
2) Anygoviamirrionln anyares occupied ţy the military forces of the NaZi govo mtnw a in Ge man y-
3) Ally goviIffiIhOnt established with the assistance or cooperation of the Ned g overnm ent of Ge, man y,
4) Any gov ernm ent wh ich wa s an all ay of the Nazi government of
assitacd or otherwise participated in the persecution of
any person becau se at mcllr. religion. national origin. or political opinion.

Provisions at 212 (a):
to
Aliens who at " time were exchange visitors subject to the two-year wov residence requirement unless the requirement has been satisfied or waived pursuant to the provisions of section 212 (o) of the Act.

Zof theebove provisions apo to you?
00, Y  □ Yo5    (it 'Yee explain on a saparate sheet of paper.)
29. It your native alphabet is other than Roman letters, write your name in your native alphabet

6, Grounds of exclusiOck I may be vviahoed for hum anitarian pu rpose% to . following provisions

(2) Aliens who are insane.
(3) Aliens who h ave su ffered o ne or m ore atta cks o f insanity.
Allen$ who h ave co mm ited'or w ho ha ve be en Con victed of a crim e    (4)
menta l defect,
Aliens who have been convicted of two or more oftenses for which the    (5) aggregate sentences to confinement actualy imposed were live years or

(6) Aliens who are afflicted with any dangerous contagious disease.
(7) Aliens who have a physica l defew . diseas e or disa bility affectin g their ability to earn a living.
(S) Allen$ who are paupers, professional beggars or vagrants.
(11) Aliens who are polyg amis ts. or ad voca te pdg amy.
(72) Aliens are prostitutes or former prostitutes. or who have procured or attempted to procure or to import, prostitutes or persons for the purpose of prostitution or for any other inmoral purpose. or aliens coming to the United States 10 ongage in any *the( unlawful commercialized vice. whether at not tollated to prostitution

of government by force or violence:
act.
(16) Allen$ who have been excluded from admission and ooported and who again seek admission within one year from the date of such deportation.
(17) Aliens who have been arrested and deported and who reentered the United States within five years from the date 01 deportation.
(19) Aliens who have procured or have attempted toprocufe a visa orotner docum entation b yfraud. o(by willfully m isreprese ritiN a ma terial fact.
(22) Aliens who have applied toir exemption or discharge from irairiling or service in the Armed Forces of the United States an the ground of alienageandwho havebeen relieved or(i$Chafg0d from Such training or service.
(31) Aliens whoatanytime, shall have,knowlingly and forgoin.oAcouraged, induced. assisted, abetted, of aided any 0Jh6r alien to enter or to try

ardor ft United States in violation or law,

Do any of the above proviSions apply to you?
XNo    □ Yes (if "Yes" explain on a separate shm of paper.)
30. Language of native alphabet

12S Its ftmk2~

31. Signature of Applicant -I CERTIFY, under penalty of perjury under the laws of the United States of AMeriM that 32. Date (Month/ Day/Year I the foregoing it. true and correct I horeby consent and authorize the Service to verify the information provided. and to conduct police, welfare and other record checks pertinent to this application.

[Hti~l rtr.-    ~& - +C_KA

33. Signature of person preparing form, dolbW than applicant I DECLARE that this document was prepared by me 34. Date (Month/Day/Year) at the reque* of the (he app/ka#71 and is based on all information of which I have any knowledge.
0-    0
B0    fc 'i, V U U T f. -1 L4_

36. Name and Address of person preparing form. ft other than applicant (type or printA    51. Occupation of person preparing form

QUALIFIED DE64GNATED ENTITY USE ONLY
.37. Reiviewed by (Print or Type Name)    38. Signature    39. Date

IMMIGRATION AND NATURAILIZATION SERVICE USE ONLY
40. Recommendation: Tiampqrwy Residence    41. Recommendation: Waiver of Excludability under'

- 13 Approved    )E.Deniad    Section 212 (a)    is 0Approved    13 Denied
42. Class of Admisaloiri 1    43. Place of Adjustment    44. Date of Adjustment
Z:::~/~    --to
45. Recommended by (Print or type Name and Title)    46. Signatiure    47. ID No.    48. Date    fZ
49. Final Acbm Temporary R"dence 4~1    --60. .. tor    52 Pete
rnional 110$css/n~ Facilitif    115_00_~-    -    I    -
TOTAL P.04

JLL-18-2002 11:02    USDOJ/INS/LITIGATION UNIT    717 840 7242    P.15

'-'AT~-S DEPARTMENT OF JJ(*(.r..

*IMMIGRAILON* AND NATURALIZATION SERV~iCE

HEADᴋANDUM OF CREATIUN OF ᴋECORD OF LAWFUL :IERMANENT RESIDENCE

ATLANTA7 GA                              FILE NO: 91591986

A L E:

STATU~, AS A LAWFUL. PERMANr_ 'Nr RESIDENT OF THE UNIThO STATES 1S ACCORDEDT

NtiL. "KtJIKL:                ALAKA                    SeX: F
L
      . no
    AME: Q
-IN CARE -DF:-'                              BIRTH DATE: 10/28/63
STREET ADDRESS: 6584 C~OLLIER RE'          CTRY OF 31RTH: INIGIA
CITY: RIVERUALE            i~A 30Z96       *NATIONALITY: NIGIA*
*CITY OF ᴛiIRTH: iSADAP,*                   *CoUiNTKY 'JF LAST* RESIOTENCE. INIGIA
*MARITAL STATUS: N*                         *I-ECUPATION:*
~IUTHERS FIRST VANIE': ESTHE.-<            FAT(AFᴋS *FLRST NAAE: OLADEJO*

*UINDEP TdE F6LLOWING PROVISIJNS jF LA,-.'.*
(X) SEC. ZIU (4) OF T-"
                        .1= ᴛ; N A" T
    *AS 'JP: 1Z/Ol/iO*          AT: ATL                -,;-ASS              '426

            BY: AUT.)
*DATE: 06/Z4/9j REMARKS:*

*Ii~'.[:Arv CL)PY i'LNo':*

F;U.R-X' 1-181 lki'-V IL-1-861                              *0-1) 131*

JLL-18-00
717 840
P.06

# Eniteb. btateg; 3D i5trict (Court"

**District of**    Minnesota    h Divissioll

**40901 th0itt I -Audgmwit in a criminal Case**

**JUDGMENT IN A CRIMINAL CASE** .
(For Offenses **Committed On or After November 1, 1987)**

.~Z     \19
- . "; .1

Case Number:     4--92-5(02)

Hersch Izek-

Defendant's

UNITED STATES OF AMERICA
V.
*oyen&,ke Adebola Alaka*

2

**(NaMe of Defendant)**

THE DEFENDANT:

**M pleaded guilty to count(O**

**0 was found guilty on count(s)**            after a
0
**plea -of not guilty.**

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| We & Section | Nature of Offense | Dale Ottense Concluced | Count Number(s) |
|---|---|---|---|
| LS 1344 & 2 | !biding & a!Detting ban% fraud. | | |

The defendant is sentenced as provided in pages 2 through imposed pursuant to the Sentencing Reform Act of 1984.

0 The defendant has been found not guilty on count(s) and is dischyged as to such count(s),
    Count(s)     3
    dismissed on the motion of the United States.

E5 It is or0ered that the defendant shall pay a special t of S

imm ediately         which shall as follows:

June A,_     of this judgment. The sentence is
Date of.1moosition of Sentence

Sicnature of lludicial i6ificer     i£(! (are)

Diana E. ___ Mulz hy
    ..MZ7

June 5, 1992

assessmen for courift be due IR,

IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for **this** district within **30 days of** *any* change of name, residence, **or mailing** address **until** all fines. restitution, costs. and

special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: f-:~2-69-0502

Defendant's Date of Birth:

Defendant's Mailing Address:


Defendant's Residence Address:

    I
    Nong
                  D j a t;)
                  ,.' - 5 -

JIJ
L-
18-
2002
11:0
0
USDO
J/IN
S/LI
TIGATION UNIT

efendant: 0YOnike Ad ebo:Ld AlWka

Case Number:    4-99-502)

717 840 7242

Judgment- Page-. 2 - - -

IMPRISONMENT

.1 n.

P.07

The defenda*nt is hereby committed to the custody of the United States Bureau of Prisons to be.impelsoned for a term of 8 mOnths -

..440)      i~risvn . men%
- - /! , S'hc~cl 2 - to'

11 The court makes the following recommendations to the Bureau of Prisons:

01 The defendant is remanded to the custody of the United States marshal. U The defendant shall surrender to the United States marshal for this district.

..Marshal

I have executed this judgment as follows:

a.m,

P.m. on

L.; as notified by the United States marshal.

The <u>defendant</u> shall surrender for service of sentenCe 21. the insi.ilution designated by the Bureau of Prisons. before 2 p.m. on as noUfied by the United States marshal. as notified by the probation office.

## RETURN

Defendant delivered on . . . . . . . . . . . . . . . .     -Ao  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .at

. . . . . . .  . .   Witil a certified copy of this judgment.

tin,:tio states marshal

By

dant:  ,yenike Adebola Alaka                    Judgment-Page -   3   of
/0 Number:      4-92-5(02)

## SUPERVISED RELEASE

UUP(:
pon release from imprisonment, the defendant shall be on supervised release for a term of <u>3 years-</u>

While on supervised release, the defendant shall not commit another federal. state. or local crime and shall not Illegally possess a controlled substance- The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). If this judgment imposes a restitution obligation, it $hall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

[I The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hoursof release from the custody of the Bureau of Prisons.

0 The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised releas-.

El The defendant shall not possess a firearm or destructive device.

That deft. be held responsible to make restitution in the aniount of $4,716.68 to Norwest Batik

## STANDARD CONDITIONS OF SUPERVISION

White#* defendant is on supervised release pursuant to this judgment, the defendant shall not commit another federal, state or local cri-e.

1) tne defendant shag not leave the judicial district without the permission of the court or probation officer,
2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written revar ! v. w the fWat rhm days of each month;
3) the deferidant shag answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer: 4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling. trainjn,3. or other acceMble reasons 6) the defendant shag notify, it" probation officer within 72 hours of any change in residence or employment:
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, posse ss, use. distribute. ot administer arty narcotic or other con1 rr-::- _,C subslance. or any paraphernalia related to such substances. except as 0(escribed by a physician:
8) " defendant shall not frequent places where controlled Substances are illegally sold, used. distributed. or administered:
9) ine defendant shelf not associate with any'persons engaged in criminal activity. and shall not associate with any person convicted of a felony vn:is~ granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to viaii him or her at anytime a; home or elsewhere and shall Dermit confiscation of any contraband observec in plain view by the probation officer:
11) the defendant shall no6ty the probation officer within seventy-two hou. s :,: I)wng an cs.ed or questioned by a law aniorcarnent olice.
12) the defendant shall not enter into any agreement to act as an informer or a special acent of a law enforcemen., agency withov, the permission of the co;j:
13) as directed by ft probation officar. the defendant shall notify third parties of risks that may be occasioned by the defendanCs criminal record or personal hisilMorcharacteristics, " sh all permit the probation officer to make Such notifications and to confirm the defenclantIs cornoliance with such notdica-ior)

?1? 840 ?242 P.09

JLL-18-2002 i1:00        USDOJ/INS/LITIGATION UNIT

RowfitUtion and
ShVet 6                                          Judgment-Page        4 of5

ant: oyenike Adebola Alaka
Number:     -&-92-5(02)

## RESTITUTION AND FORFEITURE

### RESTITUTION

0 The defendant shall make restitution to the following persons in the following' amounts:

Name of Payee                              $4,740.89  Amount of Restitution

Norwest Bank
Morwest Audit services, Inc.
*Norvest Center*
Sixth and riarquette
Mp1s., M 55479-2012
Attn: Jim Sorer=n - investigations
(Tenika Andersw account)

Payments of restitution are to be made to. ft United States
      Attorney for transfer to the payee(s). the payee(s).

Restitution shall be paid:

0 in full. immediately
0 in full not later than
0 in equal monthly installments over a period of this
   juagment. Subsequent payments are due monthly          months . The first payment is due  on the date of
   thereafter.

   in installments according to the  following schedule of payments:

      As directed by the U.S. Probation Off ice.

Any payment shall be divided proportionately among the payees named unless otherwise specified here.

### FORFEITURE                                                        i
0 The defendant is ordered to forfeit the  following property to the United States:

JUL-18-20W 11:01      USDOJ/INS/LITIGATION UNIT      ?1? 840 7242   P-10
4L-90) Shmr 7 - 5jj-j,1-ivnt of

nt, Oyenike *Adebola Alaka*   *Judgment-*
... ................... *of*
Number: 4-92-5(02)

*Page __5*

## STATEMENT OF REASONS

The court adopts Vhe '.aclusl findings and guideline appiicatlon i(l the pr sPr.-tence report'.

e

OR

KThe court adopts -he factoall findings and guideline application *in the preserience report except*
(mzt,tachmen , ii necesi-arv*i:

**Guideline Range Determined by the** Court;

Total Offense Levell;

Criminal History Category;

Imprisonment Range:         to- 1-4months

Supervised Release Range: --L- to __5_ years

Fine Range: *SZdM.* __ to $1 - WQr_0M_ - (plus costs of imprisonment or supervision)

*9)* Fine is waived or is Wow the guideline range, because of the defendant's inability to pay.

Restitution: $

Full restitution is not ordered for the following reason(s):

The sentence is within the guideline range. that range does not exceed 24 months. and the court finds no reason to depart from the sentence called for by application of the guidelines.

OR

r
.The sentence is w4 hin the guideline range, that range exceeds 24 rnonths, and the sentence is                    -ad
for the following reason(s):

OR

The sentence departs from the guideline range

!L-: upon motion of the government, as a result of defendant's substaritiai assistarce.

0 for the following reason(s):

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

United States of America,

/Uni

               Plaintiff,'                    Crim. No. 4-92-05(02)

v.

Oyenike Adebola Alaka,                         SENTENCING MEMORANDUM

              Defendant.

## FINDINGS OF FACT

The court adopts the factual statements contained in the presentence investigation report (PSI) as to which there are no objections. There are two disputes with respect to factual statements contained in the PSX-

*Defendant objects* to the statement that the total intended loss was $47,969.20. Defendant argues that the court should calculate the intended loss only on the basis of count 2 of the indictment. The PSI included counts one and three of the indictment, and non-charged conduct, to arrive at the total loss. Defendant argues that this conduct is not relevant conduct under § 1BI.3.

Defendant also objects that her offense did not involve more than minimal planning. Defendant argues that the planning involved for the offense of conviction was no more than necessary to carry out that single bank fraud. Defendant also argues that the court should ignore the offenses charged in Counts 1 and 3 of the indictment, and ignore the non-charged conduct with respect to TCF banX.

The court resolves the disputes as follows:

The court finds that defendant's conduct with respect to the banks in Counts 1 and 3 of the indictment, and her conduct with respect to TCF bank was part of a common scheme or plan as the offense of conviction. United States v. Gooden, 892 F-2d 725, 728 (8th Cir. 1989). The court further finds that the*total intended loss was $47,969.20- United States v-. West, 942 F.2d 528, 532 (8th Cir. 1991).

Four different banks were the intended victims of defendant's offense conduct. An offense involves more than minimal planning if there were "repeated acts over a period of time, unless it is clear that each instance was purely opportune." § JBI.1 Commentary l(f). Furthermore, the, parties' plea agreement stipulated that the offense involved more than minimal planning. The court finds that defendant's offense

conduct involved more than minimal planning.

**APPLICATION OF CMDELINES** TO FACTS:

There being no objection to the PSI's conclusions as to the applicable guidelines, the court.adopts those conclusions and determines *that* the applicable guidelines are:

> Total offense Level: 11
>
> Criminal History Category: 1 (0 points)
>
> 8 to 14 months imprisonment
>
> 3 to 5 years supervised release
>
> $2,000 to $1,000,000 fine (plus cost of imprisonment or supervision)
> $50 special assessment

### III. IMPOSITION OF SENTENCE AND STATEMENT OV REASONS

Oyenike Adebola Alaka, you have been charged in Count Two of the indictment *with* aiding and abetting bank fraud, in violation of Title 18, United States Code, sections 1344 and 2.

Based upon your plea of guilty to that charge, it is considered and adjudged that you are guilty of that offense-

The court finds that Norwest Bank is a victim of this crime and that it has suffered a loss of approximately $4,716.68-

THEREFORE, IT IS ADJUDGED:

that on count 2, you are committed to the custody of the Bureau of Prisons for imprisonment for a term of 8 months;

IT IS FURTHER ADJUDGED:

that pursuant to 18 U.S.C. § 3583 you are to serve a term of supervised release of three years, upon the following terms and conditions:

> 1. that you not commit any crimes, federal, state, or local;
>
> 2. that you abide by the standard conditions of supervised release recommended by the Sentencing commission;
>
> 3. that you not possess any firearms or dangerous

weapons;

4.   that you be held responsible to make restitution in
     the amount of $4,716.68 to Norwest Bank. Restitution
     is to be made payable to Norwest Bank and sent to
     Norwest Audit services, Inc., Norwest Center, Sixth
     and   Marquette,   Minneapolis,   *Minnesota* 55479-2012,
     Attention: Jim Sorenson
     Investigations. (Tenika Anderson account).

that pursuant to 18 U.S.C. § 3013, you are to pay to the United
States a Special Assessment of $50, due immediately.

<u>Reasons for Imposing Sentence **within** Guideline Range</u>

The court finds-that the sentence of imprisonment called for by
the guidelines is appropriate in this case and that there are
no  aggravating  or  mitigating  circumstances  not  adequately
considered by the Guidelines.

<u>*Zing*</u>

A fine is not imposed *in this case* because defendant is apparently
unable to pay a fine due to her lack of assets and pending
incarceration.

<u>Plea Agreement</u>

The court has accepted a plea agreement in this case because it
is  satisfied  that  the  agreement  adequately  reflects  the
seriousness  of  the  defendant's  offense  behavior  and  that
accepting the plea agreement will not undermine the statutory
purposes of sentencing.

Date;

                         Diana E. Murplfy
                    United States District Judge

J'LL-18-2002 11:02

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE JFK INTERNATIONAL AIRPORT JAMAICA, N.Y. 11430 MEMO TO FILE -**

La.4 Name: **A.,4**

**Firstmumc**

DATE;

**dlalo /**

**AKA**        I   __ -
**D013:**      /0  - Z&
**POS:**            / qx1A
**PP#**
**Nivo**
**CLASS**

A#                          -5-97, Ir.
1940         liap-LS-14W 0. c?
U.S. addro" 7-4) :WT,J -r.
       a N i END E        Ail

COUNTRY
POST
TATE ISSUE

jV11        c

Subject arrived 0                        fthainsa Airlines from Lagos, Nigeriia and presented for insp,C'a* d*i 'on V. "Hil -4-551 A # 91581986 and her Nigerian passport # c475360. Subject was referred to secondary for TECS lookout for CIMT and as a possible match,arrest and conviction ' for conbolled substance. Please see 'attad%d TECS-prin'tolUts: -There is a.ls-o* an "active -federal warrant-by U.S.-M-arShals

                    V]61~t:ibh*.'U.S'.*Matshtilt'.-coritzided at (202)' hold subject.until pickup. I-7247.detainer_exK.utqd,_.._. Subject-.appears.-to--be--inadmissible.,.O~-d.e*r ~secuon and-(-2X.C) of the
       'SuWe- -alor'arperas in CIS 41                        n number----
       -.-

                    th'the following- alien regist~tio

       7-

       :svrr-, 3-s l.s%,*

arnount.Ofilo-lcv.inalicn!sposs.S                Action authorized by
                                                                                 A4
    LLED              rlz;h-ou
                 iOn Inspector)        (United Stoics Su~pemisory ~Imm gration ~Inspector)

(United States Ininfigration Inspector)

                                                                 alienserved on
                                                           GA  Cr    )ORO
                                                                     SOTo
                    T2          CRORRE O TO
       0

              Sp'
       i      7-

aza                201 varick St.                                    WACKF-NH-'JT FacLhty   8ER9S__F.,dQy
.NY
N  YO ~RK          New York, NY                 liLtZABETH r4i        QUEENS. NW˙~           BEkKS C'
                                                                                            ounty Pa.

'_ I
11-/

JLL-18-2002 10:513        USDOJ/INS/LITIGATION UNIT        717 840 7242    P.02

U.S Department bf Justice
Immigration and Naturalization Service                    Notice to Appear

in remval proceedings =der section 7.40 of the Inmaigration sLnd  NiLtionaty Act

File NO:      A91 581986

Ya the Matta of
Respondent A bIm                              -0yenilm
AIK/A        Anthmy              fiWelyn Debbie                    cwently residing at
             200 Hat Street
             prookiy% NY                                          Upk
        Okwbar. streett, ft sWA aW ZIP code)        (Area code and ph= number)
        1. YOM 2[e an Miving alien.                 Date, ofbfilh        Oct. 28, 1963

        I Ym am an allm Wesent in the United States *ho his not been admitted or paroled.
        3. You bave bem admitted to the United States, but = de*pogtable tr the* rewons stated below.

The S au'lenes got YM
        I You are not a citizen or national of the United States.

LV  You are a native of        Nigeria                    -and a citizen of

        Nigeria
        SEE AWACHED 1-831 FOR CONTINUED ALLEGATIONS On the basis
oftba fmvg*e it is d=aed tbal yw are sn1ject to removal fromthe United States *pwmaw to Me* MWwing
provisim(s) of law.


        SEE ATrACHED 1-831 FOR CHARGES

        711iS D01tiCe is being LmW after an aWwn officer bas &and tbal the respondent bas dw=&Med
        a cmdible (w of pmsecudon or tonm.

        Sectim 235(bXl) order vas vacaied pamant to:        8 CFR 208.30(f)(2)        8 CFR
        235,3(bX5Xiv)

YOU ARE ORDERM to appear beibre an immipationjudge ofthe United States Depatment oflustim at.
        The Office of the Immiariation Judoe Executive Office for Immiariation Review

        (complete Addren of kna4vmfion Couxt, Muding Rom Number, if an36 to sbow v&y you shmId not be
                removed from Me United States

based on the charge(s) set ft& Above.

                                              ell

                                    and  ntle of UsiM Officer~
DaW.        9 2-80f                 bvhifnfim kapector (SO)
                                    T____
                                    NYCIPM DO, NEW YOM NEW YORK
                                    (City and State)
                                        Fom 1-962(kev. 3)22/99)'

U.S. Department of Justice'.
Immigration and Naturalization Service

NOV

Oy-zke
--      DASe                    A91581936

. AUU
AKA                    AuthW
Fac Nftgmr

## ALLEGATIONS

3.          You applied for admission to enter the United States at New York, New York on or about August 09, 2001.

4.          You applied for admission as a Returning Lawful *Pamment* Resident.

5.          You were convicted of the crime of Aiding and Abetting Bank Fraud, in violation of Sections *1344 and 2 of Title 18* of the United States Code, pursuant to. a judgement entered on or about June 05, 1992 by the United States District Court, District of Minnesota. under case number 4-92-5(02).

|_Title

h=d1Pq-kW-Wr(S0)
PAGE #

clr

nature

## 111iCl W11"

FOMMI Qnfimacan                    (JK.V, VW7)

U.S. Department of Justice *~ ,
<u>Immigration</u> and <u>Naturalization SWice</u>

Condawfift ]P*p im Fam NTA

AHWsNam

| | OYMU B%v1ynD"k | File **NUM-w** | | | Date . . NOY :19 2001 - | J&L- 2 |
|---|---|---|---|---|---|---|
| 10:59 TION UNIT | US | DOJ/IN ?17 | *A91 581 M* | 200 S/L 840 ?242 | | ITIGA |
| | | | | | P.04 | |

AKA

AUka
And-y

## CHARGE(S) - -

**Section** 212(&)(2XA)(x)(1) of the hninigration and Nationality Act, as amended, in that *you are an alien* who has been convicted of, or who admits haymg committed, or who admits committing acts wfuch constitute the essential elements - of a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime.

Signature

*r4MMM-11*          *.pv-. (Itaw. 4/07)*

C.

## Nodee to Respondent

* Warmng; Any statanant you nuke may be used against you in rawyal prooceedingL * Ahm Registration:- Ibis copy of the Notice to Anear sm-ved uport you is evidence ofyw alien registration wbile ~m we under removal proceedhw. You are required to carrylt with ycm at all times.

Representation: Ifyou so dxx)so„ you may be represented in this proceedm& at no ctpextm to the auvemment, by an attorney or otbAr individual authorized and qualilled to represent pamus before the Executive Office for bum4pfiort Review. pursuent to 8 CPR 3-16. UnIm you so request, no h ewing will be wlwduied earlier than ten, daYs fian the date offt notice, to allow you safficient tim to secure counsel. A list of qualified **affoxna"p** and *aqpnintions who may be available to* represent you at no cost will be p-ovided **iAft this** Notim * Conduct ofthe hu&z At the tam ofyuu hearing, 3pu should bring with you. my amda-Ats or other doctiments Wbich You desim to bave considered in cminection with your cast If ow domment is in a fteign languaM you must bring the original and a certified **Engli-sh** ftandation ofthe document. Ifyou wish to have *the* testimony ofanywituesses considered, you should arrange to bave such witnesses present at the hegrmg. * At ym bearing you wfll *be* gLvexi the oppm1unity to admit *of* deny any or all ofthe alleptim in the Notice to Appear and that you are inadmissible or depmW* ort the cbages contamed in the Notice to Appm, You will have am opportunity to present cvidence on y= own bdW4 to ommine any evidence presexited by the Govern~ to objeM an proper lepl Wounds, to the raccipt ofevidence and to mw wmmim any witnesses presented by the COVemment At the conclusion, ofym bearing- you **bave** a 6& to appeal an adverse decision by the immigr4onjudge. * You **wM** be advised by Me immigration judge befte whom you appe2r, of any reW **from ranovA** for WN.Ch you my appeardigible including the privilege of departing voluntarily You will be givenareaSOn2bleopportunityto make wrysuch application to *the* immigmtion judge, * Failure to appear You we required to pwh& tlie INS, in wrift *with ym* **W** mailing address and telephone nuabcr.yoli *MiEd* notifY the hmnigation Court immediatelY by *using* Form, SOM-33 whaiavw you change your address or telephone: inimber during the courm of this proceeding. You *will* be provided **with** a copy of this form. Notices ofheadn- will be mailad to M address. if ym do not submit Form BOM-33 and do not othawise provide an address at wbich ym may be readied during pmeeodings, then the Governwad sW not be required to p1wide you with written notice ofyour hewing If you bil to attend the hearing at the fim and place desigmted an *thisnotice,* or anydate and um later directed by the homigmtm C4urt a removal order =y be inade by the immigrationjudZe **In** your absence. and you maybe 2mwed md detained by the iNs.

## Request for Prompt HeafIng

Toccp&&eadetennin ationmmycase~lreqaastanhmzd wehe&=Z lwuw myri& to have a 10-dayperiod pier to appearing befm an imnAM*ionjudge.


(Signature of Respondent)
Dite:


I ~1 **Z691**          in *the* Mowing rm          and in


I I          byregularmaii

MOM

(Signalum and Tide of M offica)
Certirk2te **of Service**
This Notice to Appear was swied an the respondent **byrne** on

(Date)

coa#i          wM section 239(aX1)(P) of the Act:
          Jupersm                    by certified                                        nail,
x;eturn receipt requested
          = ‚AOJ
          *i      re and Tide* of Officer)
          AttacAwd is a mulible AW worksheet.
          Aftwhad Is a list of organizations and          J!os!e R 1: MO          Fom M62 (Rev. 3-22-")
which proyide fift legg services.                                        attwMs

          lle &hen was provided **oral** notice in the      Exiglisb      **language** of  dim and place ofhis or ber
bealin      A -0.1- consequences o f failare to appear as provided in

a_~C th' -
(Signatm of Re:pondant if Pwsoflally Swied)

1%

LAW/INS LITIGATION UNIT                     717-840-7462
V.O. *IMPZU UAACIAL MP* Ub%,G

*Executive Office for Immigration Review*

. JLL-17-200209:17

*Board of Immigradon Appeals*
*Office of the Clerk*

I

INS LIT./York Co. Prison/YOR
3400 Concord Road York, PA
17402

5NI U"bW, Pat,
**slat** 13W FaW
adm* VLT-
22041          A35-601-243

Schooner, Jam M.
400 MarkK Shvet, Sufte 420
Philmidelphia, PA 19106-OOW

X.. t-A C, tj

Hmm SURIMAC"ERMOSEN, EDDY SIGFRIDO                    &-rA,vt      4~0

**Date** of this nottice: 0612812002

F-wilosed **is a copy** of the Board's decWon and **order** in the above-referenced case.

Sincerelv.

04a-- dn,4~

L4DH Scialabba.
Acting Chairman

Enclosure

Pawl M=nbers:
     ESPENOZA, CECEUA K
     EESS, FRED

PAULEY, ROGER

U.& ]Depart meat of Justice                          Dwision.of the Bowd of ImmiVafim Appeah
&4wfift OMW  for IMMigMtWA RCVieW
FaW                          22041

File: A35 681243 - York                              Date: JUN 2 8 2002

In rw. EDDY SIGFRIDO &UW&Q1-GERM0S19N

IN BOND PROCEEDINGS

        APPEAL

ON BEHALF OF RESPONDENT: Pro se

ON BEHALF OF sERvIcE:              **Jdrmy** T. Bubier
                                   Assistant District Counsel

APPLICA17ION: Change in custody sums


        ORDEEL-


    PER cuRLAm. ihe immigmtion and Naturalization Service has 90pealed the judge's march i i , 2OW, bond order findingtherespondent not subject to nundatMdetentiOn under section 236(cXl) ofthe Immigration and Nationality Act and setting bond at S 1,5W. The Service's appeal is sustained.

    *The Service, argues that* the Immigration Judge had no authority to set bond for an alien classified as an arriving alien on the Notice to Appear and contends that the 1=dgration Judge erred in relying on the decision in PaW v. ZmsAi, 275 F-3d 299 (Y Cir. 2001). IMe Service asserts that *Patel v. Zonski, supra, does not apply to* the instant proceedings because in that case, the United States Court of Appeals for the *Third Circuit~* in which jurisdiction the instant case anses, *was* mmining file mmidiftry detention provisions *found at* section 236(c) ofthe Act. The Servica states that Patel v Zemki, sWa, does not apply here because the respondent has been charged as an arriving alien and is therefore subject *to* mandatory detention under section 235 of the Act, not section 236(c) of the Act

        We **as"** that the 1wmigration Judge in this raw lacked the requisiteJurisdiction to antemixi the respondent's requesi for a change in custody status. 'Me current regulations goveming the detention andrelease ofaliens preclude an Immigration Judge ftm                       . ingthecustodystatus of atrivinS aliens in removal proceedings. See 8 C.FJL § 3-19(hX2Xi)(8). Indeed, where the Service has designated an alien as an "arriving alien," the limnigration Judge is precluded fim undertaking a determination as to the propriety of the Service's designation. See -8 CY.P. *§ 3.19(h)(2)(ii) (suggesting that only* aliens included in paragraphs (C). (D), and (E) -of 8 C.F.R. § 3.19(h)(2)(1) may seek a de=ination by an Lmmigration Judge as to the propriety of their inclusionvithin these paragraphs); see generally Matter ofioseph 1, 22 L&N Dec. 660 (BIA 1999). Because the Service designated the respondent as an arriving alien on the Notice to Appear in this *case, the*                       *Judge was prftluded from* entertaining the respondent's request for a change *-in custody status.*

A35 f81 243

Decisions of a circuit court * are binding within that circuit's jurisdiction. see gem"lly, Matter qfAwelma, 20 I&N Dec. 25 (BIA 1989). However, we do not fwd that the decision of the United States Court ofAppeals for the Ibird Circuit in Patel v. Zenwki, supra, in whichjurisdiction ffie iustant case arises, is binding on these proceedings. As the Service correctly points out in its appeal W4 the only mue Wore the Third Circuit in Patel v Z=sA supra, was *the constitutionality of the mandatory detention provisions of section 236(c) of the Act.* Ile Third Circuit has Yet to Pubfish kcase regarding the nwdatory detention provisions ofsection 235 ofthe AAt, which is the section of the Act governing this respondent's case.

AccorTingly, the appeal is sustained and the Immigration Judge's *March I I, 2W2, bond* orda is vacated.

-'~FO~RTHR. BOAP

2

TWAL P.13